IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| **TAYLOR A. CAMPBELL** | Case No. _____ |
| Plaintiff, | **COMPLAINT** |
| v. | |
| **BNSF RAILWAY COMPANY,** | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff, Taylor A. Campbell ("Campbell"), by and through his attorney, Jason Leonard Simmons of Rossi Vucinovich PC, for his claims and causes of action against Defendant BNSF Railway Company ("BNSF"), hereby states and alleges as follows:

## I.   NATURE OF ACTION

1.1   This is a civil lawsuit for personal injuries suffered by Mr. Campbell, arising from a fall he suffered on November 25, 2022, in Tukwila, Washington, due to BNSF's negligence. BNSF negligently failed to provide Mr. Campbell reasonably safe workplace conditions, negligently failed to maintain and provide him reasonably safe equipment and tools to perform assigned tasks, and negligently failed to properly train Mr. Campbell, which resulted in a permanent and

COMPLAINT - Page 1

debilitating ankle and foot injury, and which occurred while Mr. Campbell was employed by BNSF as an intermodal equipment operator.

1.2     This is also a civil lawsuit for unlawful employment retaliation arising from BNSF's unlawful termination of Mr. Campbell. After Mr. Campbell reported his injury to BNSF, BNSF terminated Mr. Campbell and a contributing factor to Mr. Campbell's termination was Mr. Campbell's injury and the report of injury.

1.3     Under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, as a result of its negligent failure to maintain, inspect, and/or reasonably ensure the safe and compliant conditions BNSF failed to provide Mr. Campbell a reasonably safe place to work, thereby caused injury to him, and is liable to him for damages in such amounts as will be proven at trial.

1.4     Under the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109, *et seq.*, BNSF unlawfully terminated Mr. Campbell and therefore is liable to him for damages in such amounts as will be proven at trial.

## II.     PARTIES

2.1     Mr. Campbell is a natural person and resident of the State of Washington.

2.2     BNSF Railway Company was and is a corporation duly organized and existing under the laws of the State of Delaware.

2.3     BNSF is present and transacting business in the State of Washington, including in this judicial district.

## III.     JURISDICTION AND VENUE

3.1     At all material times, BNSF was operating an interstate system of railroads in and through the several states, including the State of Washington, which system includes lines of track in the judicial district where this action is filed.

3.2     At all material times, BNSF was an interstate carrier by rail and was engaged in interstate transportation and commerce.

3.3     At all material times, Mr. Campbell was employed by BNSF as an intermodal equipment operator in Tukwila, Washington. As such, he was working and engaged in interstate transportation and commerce at the time of the incident at issue in this case and was working in the furtherance of BNSF's transaction of interstate commerce. In this work, Mr. Campbell directly, closely, and substantially affected the general interstate commerce carried on by BNSF as a railroad common carrier of freight for hire.

3.4     The subject matter jurisdiction of this Court is in part based upon 45 U.S.C. § 51 *et seq.*, commonly known as the Federal Employers' Liability Act ("FELA"), and this action is timely commenced within the meaning of 45 U.S.C. § 56.

3.5     The jurisdiction of this Court is also in part based upon 49 U.S.C. § 20109, *et seq.*, commonly known as the Federal Railroad Safety Act ("FRSA"). Mr. Campbell timely filed an administrative claim under the FRSA with the Occupational Safety and Health Administration ("OSHA"). More than 210 days have elapsed since the file date, and while an initial decision was issued by OSHA, Mr. Campbell has elected to exercise his right to file an original action *de novo* pursuant to 49 U.S.C. § 20109(d)(3) rather than to pursue further administrative action.

3.6     This Court has personal jurisdiction over the person of Defendant BNSF because that entity is present and transacting business in the State of Washington, including this judicial district, and because in so doing BNSF has purposefully availed itself of the protections of the laws and regulations of this State, and because the injuries at issue in this case arose from tortious conduct that occurred in Washington State and this judicial district.

3.7     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b).

3.8 This action is timely commenced, including within the meaning of 45 U.S.C. § 56.

## IV. GENERAL ALLEGATIONS

4.1 On or about November 25, 2022, Mr. Campbell was employed by BNSF.

4.2 On that date, Mr. Campbell was assigned to work at BNSF's Tukwila Intermodal Yard as an intermodal equipment operator.

4.3 At BNSF's Tukwila Intermodal Yard, two shipping containers are regularly stacked on top of each other on a railroad "well-car."

4.4 In such situations, the stacked lower and upper shipping containers are typically connected to each other with devices called interbox connectors ("IBC").

4.5 On that day, Mr. Campbell's job duties included locking down IBCs that were intended to connect stacked shipping containers on a BNSF-owned or BNSF-operated well-car.

4.6 To lock down IBCs, Mr. Campbell, at times, was required to stand on a narrow walkway on the side of the well-car.

4.7 On this date, while standing on a well-car walkway, Mr. Campbell attempted to lock an IBC by using his hand, but the locking mechanism would not budge.

4.8 A properly working, properly maintained, non-defective IBC can be locked by simply pushing or pulling on it with one's hand.

4.9 When the IBC did not function as intended, Mr. Campbell, consistent with his training, then attempted to use a BNSF-supplied hammer to lock the IBC.

4.10 The IBC locking mechanism did not move when Mr. Campbell used the BNSF-supplied hammer, in a manner consistent with his training, in an effort to lock the IBC.

COMPLAINT - Page 4

ROSSI VUCINOVICH PC
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

4.11    A properly working, properly maintained, non-defective IBC should lock with use of the BNSF-hammer supplied to Mr. Campbell.

4.12    The IBC in question was supplied to Mr. Campbell by BNSF.

4.13    The IBC in question was defective.

4.14    The IBC in question was not properly maintained.

4.15    The IBC in question was not removed from use or service by BNSF prior to being provided to Mr. Campbell.

4.16    The BNSF-supplied hammer was broken when it was supplied to Mr. Campbell.

4.17    The BNSF-supplied hammer was defective.

4.18    The BNSF-supplied hammer was not properly maintained.

4.19    The defective and/or malfunctioning tools supplied to Mr. Campbell, including specifically the IBC and/or the BNSF-supplied hammer, in the context of his assigned job duties and work locations, created an unsafe work environment for Mr. Campbell.

4.20    While using the BNSF-supplied hammer in a manner consistent with his training and experience to lock down an IBC, the BNSF-supplied hammer slipped off the BNSF-supplied IBC locking mechanism that was malfunctioning, resulting in Mr. Campbell losing his balance and falling backwards off the well-car.

4.21    Mr. Campbell fell approximately 10 feet to the ground, landing on his feet.

4.22    Upon hitting the ground, Mr. Campbell immediately felt excruciating pain in his left ankle and foot.

4.23    Due to the fall and impact with the ground, Mr. Campbell has suffered a permanent and debilitating injury to his left ankle and foot.

4.24    Mr. Campbell maintained three points of contact with the train at all times prior to falling.

4.25    While Mr. Campbell maintained three points of contact with the train at all times prior to falling, there was no grab bar, handrail, safety harness, or like device on the well-car or shipping container to allow Mr. Campbell to securely hold the well-car or shipping container with his hand, or otherwise secure against falling.

4.26    BNSF's failure to provide a mechanism or apparatus to hold or otherwise prevent falls from a railcar while performing this type of work created an unsafe work environment for Mr. Campbell.

4.27    Mr. Campbell properly reported his injury to BNSF soon after his fall.

4.28    Due to the severity of his injury, Mr. Campbell was placed on medical leave after being injured.

4.29    Mr. Campbell suffered a permanent and debilitating injury.

4.30    BNSF terminated Mr. Campbell's employment after he reported his injury.

4.31    BNSF terminated Mr. Campbell's employment after BNSF learned that Mr. Campbell's injury was permanent, debilitating, and would prevent him from ever returning to his job of injury.

4.32    BNSF specifically claimed that Mr. Campbell was terminated for obtaining "outside work for Salesforce immediately upon the commencement" of his medical leave.

4.33    Mr. Campbell has never been employed by Salesforce.

4.34    Mr. Campbell did not obtain outside employment "immediately upon the commencement" of his medical leave.

4.35 BNSF failed to conduct a reasonable investigation into Mr. Campbell's alleged outside employment prior to his termination.

4.36 A contributing factor to BNSF's termination of Mr. Campbell was that Mr. Campbell suffered an injury while working for BNSF and submitted an injury report.

4.37 As a result of his injuries, Mr. Campbell is medically unable to return to his job of injury.

## V. FIRST CAUSE OF ACTION – NEGLIGENCE (FELA)

5.1 Mr. Campbell restates and incorporates by reference all the foregoing allegations as if fully set forth herein.

5.2 BNSF owed Mr. Campbell a duty to provide a reasonably safe workplace.

5.3 BNSF's duty to provide a reasonably safe workplace to Mr. Campbell included a duty to:

    5.3.1 Inspect and maintain equipment and tools;

    5.3.2 Supply non-defective equipment and tools;

    5.3.3 Remove defective equipment and tools from use;

    5.3.4 Properly train Mr. Campbell; and

    5.3.5 Ensure the ability to maintain solid points of contact in situations in which if a fall were to happen, severe injury may occur.

5.4 The injuries sustained by Mr. Campbell and resulting damages were the direct result, in whole or in part, of the negligence of BNSF, its agents, employees, and/or officers, and in violation of the FELA, 45 U.S.C. § 51 *et seq.*, including in the following ways:

    5.4.1 Negligently failing to provide Mr. Campbell with a reasonably safe place to work as required by law;

      5.4.2    Negligently failing to provide Mr. Campbell with reasonably safe and suitable equipment and tools for use in the performance of his duties;

      5.4.3    Negligently failing to properly inspect, maintain, identify, and/or remove from use defective tools and equipment;

      5.4.4    Negligently failing to properly inspect, maintain, identify, and/or remedy unreasonably dangerous conditions;

      5.4.5    Negligently failing to warn Mr. Campbell of unreasonably dangerous and hazardous conditions;

      5.4.6    Negligently failing to properly train Mr. Campbell; and

      5.4.7    Other acts of negligence to be proven at trial.

5.5    Mr. Campbell did not cause or contribute to this incident through his own negligence.

5.6    As a result of BNSF's negligence as alleged, Mr. Campbell suffered significant physical injuries.

5.7    As a result of BNSF's negligence as alleged, Mr. Campbell has suffered past and future economic damages in an amount to be proven at trial, including past and future medical expenses and past and future loss of earnings, earning capacity, and benefits.

5.8    As a result of BNSF's negligence as alleged, Mr. Campbell has suffered past and future non-economic damages, in an amount to be proven at trial, including future physical and mental pain and anguish, loss of enjoyment of life, and disability.

## VI.    SECOND CAUSE OF ACTION – COUNT TWO—FRSA RETALIATION

6.1    Mr. Campbell repeats and incorporates by reference all the preceding paragraphs as if fully set forth.

6.2     The Federal Railroad Safety Act, in 49 U.S.C. § 20109(a)(4) and its implementing regulations at 29 CFR § 1982 *et seq.* state that a railroad engaged in interstate commerce may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee who reports, or attempts to report, a work-related personal injury.

6.3     BNSF discharged, retaliated, and discriminated against Mr. Campbell and subjected him to adverse employment action subsequent to his engaging in protected activities as defined in 49 U.S.C. § 20109(a)(4). Specifically, Mr. Campbell was discharged, at least in part, for reporting a workplace injury.

6.4     Mr. Campbell engaging in the protected activities as defined in 49 U.S.C. § 20109(a)(4) constituted at least a contributing factor to the adverse actions taken against him.

6.5     As a result of BNSF's negligence as alleged, Mr. Campbell has suffered past and future economic damages in an amount to be proven at trial, including past and future medical expenses and past and future loss of earnings, earning capacity, and benefits.

6.6     As a result of BNSF's unlawful termination of Mr. Campbell, Mr. Campbell has suffered past and future economic damages including past and future loss of earnings, earning capacity, and benefits.

## VII.     PRAYER FOR RELIEF

Having stated the foregoing causes of action, Mr. Campbell respectfully requests that judgment be entered against Defendant BNSF as follows:

7.1     For damages under 45 U.S.C. §51, *et seq.*, the FELA, including economic and noneconomic damages in an amount established by the evidence at trial.

7.2     For damages under 49 U.S.C. § 20109, *et seq.*, the FRSA, including, but not limited to, future lost wages, interest on back pay due to Mr. Campbell, compensatory damages,

COMPLAINT - Page 9

ROSSI VUCINOVICH PC
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

including reasonable attorneys' fees associated with bringing the present action, expert witness fees, and costs of suit, and punitive damages of up to $250,000.

    7.3    Pre-judgment and post-judgment interest, to the extent permitted by law.

    7.4    Such other relief as the Court may deem just and equitable under the circumstances.

## VIII.  JURY DEMAND

    8.1    Plaintiff demands a trial by jury on all issues raised herein.

DATED: May 2, 2024

**ROSSI VUCINOVICH PC**

By: *s/Jason L. Simmons*
    Jason L. Simmons, WSBA #39278
    ROSSI VUCINOVICH PC
    1000 Second Avenue, Suite 1420
    Seattle, Washington 98104
    Phone: 425.636.8003
    Fax: 425.646.8004
    Email: jsimmons@rvflegal.com
    *Of Attorneys for Plaintiff*