...

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAYLOR A. CAMPBELL,<br><br>                Plaintiff,<br><br>   v.<br><br>BNSF RAILWAY COMPANY,<br><br>                Defendant. | CASE NO. C24-0608JLR<br><br>ORDER |

## I.    INTRODUCTION

Before the court is Plaintiff Taylor A. Campbell's *Daubert* motion seeking to exclude the opinion and testimony of Fred Reinke. (Mot. (Dkt. # 30-1 (corrected))[1]; Reply (Dkt. # 41).) Defendant BNSF Railway Company ("BNSF") opposes the motion. (Resp. (Dkt. # 32).) The court has reviewed the parties' submissions, the relevant

---

[1] The first version of Mr. Campbell's motion was filed at docket number 24.

portions of the record, and the applicable law. Being fully advised, the court GRANTS in part and DENIES in part Mr. Campbell's motion.

## II. BACKGROUND[2]

This matter arises out of injuries that Mr. Campbell suffered while working as a BNSF railroad worker. In November 2022, while working as a BNSF intermodal equipment operator, Mr. Campbell fell several feet off of a narrow railcar ledge while he was attempting to lock a stuck inter-box connector ("IBC"). (Compl. (Dkt. # 1) ¶¶ 4.1-4.5, 4.21-4.23.) No one was present when Mr. Campbell was working on the IBC or when he fell off the railcar. (*See* Mot. at 3; Simmons Decl. (Dkt. # 25) ¶ 3, Ex. B at 30:15-16.) Mr. Campbell attributes his fall to BNSF's alleged failure to create a safe working environment. (Compl. ¶ 4.26.)

At all times relevant to this lawsuit, Mr. Reinke was a manager at BNSF. (Mitchell Decl. (Dkt. # 33) ¶ 2, Ex. A at 6:11-12.) Mr. Reinke has experience developing and teaching the training program that Mr. Campbell purportedly participated in[3] when he began his employment at BNSF, including the training regarding IBCs. (*Id.* at 6:18-20, 10:10-18.) Mr. Reinke has also previously surveyed various BNSF intermodal employees over time to verify they have received consistent training. (*Id.* at 24:18-24.) Mr. Reinke, however, was not present during Mr. Campbell's training; rather, Mr.

---

[2] The parties' cross motions for partial summary judgment (Dkt. ## 19, 26) will be addressed in a separate order.

[3] The parties do not dispute that Mr. Campbell received in-person, verbal training regarding locking and unlocking stuck IBCs and that no written training was available at the time of Mr. Campbell's training. (*See* Mot. at 2; *see generally* Resp.; Mitchell Decl., Ex. A at 20:24-21:8.)

ORDER - 2

1  Campbell was trained by BNSF employee Mark Knepel.  (*Id.* at 19:17-22, 20:8-17,
2  22:14-18, 25:2-8.)
3         In April 2025, BNSF disclosed Mr. Reinke as a non-retained expert pursuant to
4  Rule 26(a)(2)(C).  (Simmons Decl. ¶ 4, Ex. C at 3 (amended disclosure).)  Specifically,
5  BNSF disclosed that Mr. Reinke will testify regarding the following matters at trial:

> (1) training provided to [Mr.] Campbell and Mr. Campbell's interaction and response to such training; (2) Mr. Campbell's access to and conformance / non-conformance with applicable safety and operational rules; (3) Mr. Campbell's actions on the date of his incident; and (4) the condition of equipment available to Mr. Campbell for use as an Intermodal Equipment Operator.

(*Id.*)  As relevant here, BNSF further disclosed the basis for Mr. Reinke's testimony as his "training, education and experience in railroad operations and intermodal operations"; his "personal supervisory training"; his experience applying BNSF safety rules applicable to intermodal operations; his "familiarity with tools and techniques" used in intermodal operations; and his "inspection and operation of equipment utilized by [Mr.] Campbell" on the date of the incident.  (*See* Simmons Decl., Ex. C at 3-4.)

       In summary, the parties dispute whether Mr. Reinke may testify regarding the specific training that Mr. Campbell received from Mr. Knepel, whether Mr. Campbell violated his training or safety rules, or the specific conduct that Mr. Campbell engaged in at the time he was unlocking the stuck IBC and fell from the railcar.  (*See* Mot. at 2, 4; Reply at 2-3; *see generally* Resp.)  As further described below, Mr. Campbell believes that Mr. Reinke's testimony on these matters is improper because his opinions are based on his review of deposition testimony, case materials, and a conversation Mr. Reinke had

with Mr. Knepel several years after Mr. Campbell's training and fall occurred. (Mot. at 2, 4, 7, 9; Reply at 2-4.) Mr. Campbell therefore asserts that Mr. Reinke's opinions on these matters are grounded in inadmissible hearsay and speculation rather than on personal knowledge and therefore must be excluded. (Mot. at 1-2, 4; *see* Reply at 2-4.) BNSF asserts that Mr. Reinke may properly opine on Mr. Campbell's training based on his own personal experience and knowledge. (*See* Resp. at 9-12.) The briefing on Mr. Campbell's motion is now complete and the matter is ripe for review.

### III.   ANALYSIS

Below, the court first discusses the legal standards applicable to Mr. Campbell's *Daubert* motion, and then addresses the parties' arguments.

**A.   Legal Standard**

Under Federal Rule of Evidence 702, an expert's testimony is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the witness's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the witness's testimony is based on sufficient facts or data; (4) the witness's testimony is the product of reliable principles and methods; and (5) the witness has reliably applied the relevant principles and methods to the facts of the case. Fed. R. Evid. 702(a)-(d). Rule 702 tasks the district court with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see also Daubert v. Merrell Dow Pharms., Inc. (Daubert II)*, 43 F.3d 1311, 1313 (9th Cir. 1995).

1    In considering a *Daubert* motion, the court's role is to act as "a gatekeeper, not a
2    fact finder." *Primiano v. Cook*, 598 F.3d 558, 568 (9th Cir. 2010) (citation omitted).
3    "Shaky but admissible evidence is to be attacked by cross examination" rather than
4    exclusion. *Id.* The court need not, however, "admit opinion evidence that is connected to
5    existing [information] only by the *ipse dixit* of the expert[.]" *General Elec. Co. v. Joiner*,
6    522 U.S. 136, 146 (1997)).

7    **B.    Mr. Campbell's Motion to Exclude Mr. Reinke's Opinion and Testimony**

8    Mr. Campbell does not dispute that Mr. Reinke is qualified to testify regarding his
9    experience developing BNSF's standardized training program, the content of that
10   program, and his expectation regarding how trainers should implement BNSF's
11   standardized training program. (Reply at 3, 5.) Mr. Campbell argues, however, that Mr.
12   Reinke should be prohibited from testifying about: (1) whether Mr. Knepel properly
13   trained Mr. Campbell; (2) the specific content of Mr. Campbell's training—i.e., what Mr.
14   Campbell was "in fact told, shown, or instructed to do"; (3) whether Mr. Campbell "used
15   excessive force" or engaged in other physical movement that caused or contributed to his
16   fall; and (4) that Mr. Campbell violated his training or a BNSF safety rule. (*See id.* at 2-
17   3.) In Mr. Campbell's view, this testimony is improper under Federal Rule of Evidence
18   702 and *Daubert* because Mr. Reinke was not present during Mr. Campbell's training and
19   his opinions on these matters are based on inadmissible hearsay, his review of case
20   materials, and speculation. (*See* Reply at 3-4; Mot. at 1, 4.) Therefore, Mr. Campbell
21   asserts, Mr. Reinke's testimony on these matters is not based on reliable principles and
22   methods or sufficient facts or data. (Reply at 4-5; Mot. at 1.)

1    In response, BNSF argues that Mr. Reinke may properly testify about the specific
2 training that Mr. Campbell received because "there are only so many ways to train
3 intermodal employees" under BNSF's standardized training program, and Mr. Reinke
4 therefore "knows, based on [his] prior knowledge and experience, what [Mr. Campbell]
5 was trained and told" despite that Mr. Reinke was not present during Mr. Campbell's
6 training. (Resp. at 6.) BNSF further argues that Mr. Reinke "has experience with Mr.
7 Knepel and his previous trainings on the standardized program" and "has confirmed with
8 Mr. Knepel that he remembers training [Mr. Campbell] and followed the standardized
9 training program to train [him]." (*Id.* at 5; *see id.* (citing Mitchell Decl., Ex. A at 19:17-
10 22, 20:8-17, 22:23-23:7, 25:10-22); *see also id.* (stating that Mr. Reinke "is qualified to
11 testify on specific standardized training [Mr. Campbell] received regarding what to do
12 when [he] encountered a stuck IBC").) With respect to Mr. Campbell's fall and injuries,
13 Mr. Reinke testified at deposition that knew that Mr. Campbell "obviously" used too
14 much force in pulling on the IBC lever because "when [Mr. Campbell] slipped[,] he fell
15 off the railcar." (*Id.* at 35:6-10.) For the reasons that follow, the court concludes that
16 Mr. Reinke may not properly offer testimony regarding the four disputed matters
17 identified above.

18    As stated, BNSF disclosed Mr. Reinke as a non-retained[4] expert pursuant to Rule
19 26(a)(2)(C). (Simmons Decl., Ex. C; *see also* Resp. at 9 (characterizing Mr. Reinke as an

---

[4] In his motion, Mr. Campbell appears to argue that "[a]ll" of Mr. Reinke's opinions should be excluded because his opinions are "not confined to personal observations or knowledge" and he did not prepare a retained expert report under Rule 26(a)(2)(B). (Mot. at 6, 10.) Mr. Campbell, however, appears to retract part of his position in his reply. (*See* Reply at 2-

expert disclosed pursuant to Rule 26(a)(2)(C)); *see also Merch. v. Corizon Health, Inc.*, 993 F.3d 733, 739 (9th Cir. 2021) (noting that Rule 26(a)(2)(C) governs non-retained experts). As a general matter, courts treat non-retained experts as "percipient" expert witnesses that may not properly offer opinions based on information outside of their personal knowledge or observation. *See Emelianenko v. Affliction Clothing*, No. 09-07865 MMM (MLGx), 2011 WL 13176755, at *7 (C.D. Cal. July 28, 2011); *see also Cantu v. United States*, No. CV 14-00219 MMM (JCGx), 2015 WL 12743881, at *4 (C.D. Cal. Apr. 6, 2015) ("the critical distinction between retained and non-retained experts is the nature of the testimony the expert will provide, and whether it is based only on percipient knowledge or on information reviewed in anticipation for trial"); *In re Flint Water Cases*, 5:16-cv-10444-JEL-EAS, 2024 WL 3585222, at *2 (E.D. Mich. July 30, 2024) ("[A] non-retained expert's testimony is limited to opinions they developed, if any, from their prior firsthand knowledge and observations."). It is true that Federal Rule of Evidence 703, in certain circumstances, "relaxes, for experts, the requirement that witnesses have personal knowledge of the matter to which they testify." *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 501 (9th Cir. 1994). Nevertheless, experts may offer opinions based on otherwise inadmissible materials only if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the

---

3 (agreeing that certain of Mr. Reinke's testimony is proper).) Because the court concludes that Mr. Reinke's disclosure as a non-retained expert witness pursuant to Rule 26(a)(2)(C) was proper, the court does not address the portion of Mr. Campbell's argument related to the need for a Rule 26(a)(2)(B) expert report. The court analyzes the propriety Mr. Reinke's disputed testimony as a non-retained expert in the following analysis.

ORDER - 7

1  subject," Fed. R. Evid. 703, and if they are "applying [their] training and experience to
2  the sources before [them] and reaching an independent judgment," as opposed to "merely
3  acting as a transmitter for testimonial hearsay." *Erhart v. BofI Holding, Inc.*, 445 F.
4  Supp. 3d 831, 839-40 (S.D. Cal. 2020) (quoting *United States v. Gomez*, 725 F.3d 1121,
5  1129 (9th Cir. 2013)).
6        Here, the parties do not dispute that Mr. Reinke was not present during Mr.
7  Campbell's training, that he did not witness Mr. Campbell fall, and that he therefore does
8  not have *firsthand* personal knowledge of these matters.  (*See generally* Mot.; Resp.)
9  BNSF asserts, however, that Mr. Reinke is qualified to testify about the "specific
10 standardized training that [Mr. Campbell] received" because he has personal knowledge
11 of the standardized training program, Mr. Knepel's trainings with people *other than* Mr.
12 Campbell, and that his review of case materials and discussion with Mr. Knepel "only
13 confirmed what Mr. Reinke already knew[.]"  (Resp. at 5, 6; *id.* at 7-8, 10; *see id.* at 11
14 ("Mr. Reinke should not become a retained expert just because he confirmed his
15 percipient knowledge and experience.").)  BNSF also appears to assert that Mr. Reinke's
16 opinions regarding Mr. Campbell's training, conduct, and injuries *in his capacity as a*
17 *non-retained expert* are not "solely" based on his review of the case materials and his
18 conversation with Mr. Knepel because Mr. Reinke reviewed those materials and
19 consulted Mr. Knepel in his capacity as a Rule 30(b)(6) witness and would "still ha[ve]
20 the same opinions based on his [own] personal experience and knowledge."  (Resp. at 10,
21 11, 12.)
22

The court disagrees with BNSF. Specifically, BNSF does not provide—and the court is not aware of—any case law parsing a non-retained expert's personal knowledge in this manner. Furthermore, Mr. Reinke's opinions about Mr. Campbell's training and conduct prior to his fall cannot logically be based solely on his *personal* knowledge and observation because he was not present at the time of Mr. Campbell's training or fall. And neither Mr. Reinke's knowledge regarding how BNSF intermodal employees are typically trained, nor his past experience with Mr. Knepel's training (*see* Resp. at 5, 6), provides Mr. Reinke with either percipient knowledge of Mr. Campbell's training or a basis to form an *independent* judgment regarding Mr. Campbell's training. *See Cantu*, 2015 WL 12743881, at *4; *Erhart*, 445 F. Supp. 3d at 839-40. Indeed, Mr. Reinke reviewed the case materials and consulted with Mr. Knepel regarding his training of Mr. Campbell in anticipation of the pending litigation. *Cantu*, 2015 WL 12743881, at *4. Accordingly, the court concludes that Mr. Reinke may testify about BNSF's standardized training program and the propriety of that training as a *general* matter, and he may offer opinions regarding how trainers *typically* teach that program, because such matters are within his specialized experience and personal knowledge and observation. Mr. Reinke may not, however, testify about: (1) whether Mr. Knepel properly trained Mr. Campbell; (2) the specific content of Mr. Campbell's training—i.e., what Mr. Campbell was "in fact told, shown, or instructed to do"; (3) whether Mr. Campbell specifically "used excessive force" or engaged in other physical movement that caused or contributed to his fall[5]; or

---

[5] The court, however, will permit Mr. Reinke to testify about how much force BNSF employees are trained to use while working on stuck IBCs, and what factors could cause a BNSF

(4) that Mr. Campbell violated his training or a BNSF safety rule. Mr. Knepel—whom the parties agree was properly disclosed as a lay witness (*see* Resp. at 5; *see generally* Reply (not disputing that Mr. Knepel was properly disclosed as a lay witness; Mitchell Decl., Ex. D at 1)—may properly testify regarding the first two matters to the extent they are within his personal knowledge or observation.[6]

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Mr. Campbell's motion to exclude the opinion and testimony of Mr. Reinke (Dkt. # 24; *see also* Dkt. # 30-1 (corrected)). To the extent Mr. Campbell seeks to exclude all of Mr. Reinke's testimony, his motion is DENIED. Mr. Campbell's motion is GRANTED, however, on the basis that Mr. Reinke may not offer testimony on the following matters: (1) whether Mr. Knepel properly trained Mr. Campbell; (2) the specific content of Mr. Campbell's training—i.e., what Mr. Campbell was "in fact told, shown, or instructed to do"; (3) whether Mr. Campbell "used excessive force" or engaged in other physical movement that caused or contributed to his fall; or (4) that Mr. Campbell violated his training or a BNSF safety rule.

Dated this 7th day of July, 2025.

JAMES L. ROBART
United States District Judge

---

employee to fall while working on a stuck IBC, as such matters are within his specialized experience.

[6] The court will permit objections to Mr. Knepel's testimony, if any, during the trial.